UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00079-BLW |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| BRYAN MICHAEL HASKELL, | |
| Defendant. | |

## INTRODUCTION

Pending before the Court is Defendant's Motion to Suppress (Dkt. 27). The Government filed a Response to the Motion (Dkt. 32) on January 19, 2018 and the Defense did not file any Reply. The Court heard testimony at an evidentiary hearing on February 26, 2018. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

On January 21, 2017 at 4:35 p.m., Caldwell Police Officers Matthew Hodnett and Larry Hemmert were dispatched to a traffic accident involving Defendant Haskell. *Def.'s Br.* at 1-2, Dkt. 27-1. Officer Hemmert arrived first. *Def.'s Br.* Ex. A at 1, Dkt 27-2. After determining the crash to be minor, with no injuries, Officer Hemmert had the parties move the vehicles out of traffic and onto an access road leading to the parking lot of the Sage Valley Middle School. *Id.* When Officer Hodnett arrived, Mr. Haskell was seated in the driver's seat of one of the vehicles involved in the accident, which was parked on the

access road, partially in the roadway. *Id*; *Def.'s Br.* Ex. C at 16:56-16:58.[1] At some point, the officers obtained Mr. Haskell's license and registration. *Id.* Officer Hodnett proceeded to ask Mr. Haskell a series of questions, including whether the car was insured. *Def.'s Br.* Ex. C at 16:56-16:58. Mr. Haskell responded that he did not know whether the car was insured, but that he personally had SR-22 insurance. *Id.* He did not have proof of insurance with him. *Def.'s Br.* Ex. B at 1, Dkt 27-3.

The officers ran Mr. Haskell's information and determined that his driver's license had been suspended. *Def.'s Br.* Ex. A at 1, Dkt 27-2; Ex. B at 1, Dkt. 27-3. At some point, Officer Hemmert also ran a criminal background check on Mr. Haskell and determined he had a prior felony conviction. Officer Hodnett then returned to Mr. Haskell's vehicle, and informed Mr. Haskell that his license was suspended, and someone else would need to pick up the car. *Def.'s Br*. Ex. C at 16:58. Mr. Haskell asked if he could park the car out of the way. *Id*. Officer Hodnett advised Mr. Haskell he would have to wait until Officer Hodnett completed the paperwork. *Id*.

At the hearing, Officer Hodnett testified that he intended to allow Mr. Haskell to move the vehicle to the parking lot of the Sage Valley Middle School. Officer Hodnett further testified that there were increased reports of accidents that day, due to the snowy conditions, and that as such he intended to return to patrol rather than to wait for a third party to retrieve the vehicle.

---

[1] Exhibit C to Defendant's Brief in Support of his Motion to Dismiss was not docketed, but is on file with the Clerk's Office at the United States District Court for the District of Idaho in Boise, Idaho.

Officer Hodnett returned to the vehicle with the written citations, and gave Mr. Haskell back his license and the vehicle registration. *Def.'s Br*. Ex. C at 17:14. Officer Hodnett asked if there was anything in the car that he needed to know about. Mr. Haskell shook his head. Officer Hodnett asked whether he could "take a look." *Id.* Mr. Haskell shrugged and said, "I don't see why not." *Id*. This exchange took four seconds.

Officer Hodnett gestured for Mr. Haskell to exit the vehicle, and Mr. Haskell complied. *Id.* Officer Hodnett showed Mr. Haskell the written citations, and explained that he was being cited for following too close and driving on a suspended license. *Id.* Officer Hodnett also informed Mr. Haskell that the citation indicated he did not have proof of insurance, but that he could bring such proof to court. *Id.* Officer Hodnett then handed the citations to Mr. Haskell and directed him to stand near the rear of the vehicle while Officer Hodnett searched the vehicle. *Id.* Mr. Haskell informed Officer Hodnett that there was a shotgun in the vehicle. *Id*. Officer Hemmert noted that Mr. Haskell was a prohibited person due to his prior felony conviction, placed him in handcuffs, and read him his rights. *Id*. The officers proceeded to search the vehicle and discovered the shotgun. *Def.'s Br*. Ex. A at 1, Dkt. 27-2.

Mr. Haskell does not challenge the constitutionality of the initial seizure, nor that the search of the vehicle was conducted with his valid consent. Rather, Mr. Haskell only challenges the constitutionality of Officer Hodnett's request for consent to search. He argues that Officer Hodnett impermissibly prolonged the seizure by four seconds when he asked to search the vehicle rather than proceeding to issue the citations detailed above.

# LEGAL STANDARD

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Thus, the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996).

"[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Generally, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Further, "[a] seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United State*s, 135 S.Ct. 1609, 1614 (2015).

To determine whether the length of a particular stop is reasonable, courts must look to the purpose of the stop. *Id.* ("the tolerable duration of police inquiries . . . is determined by the seizure's mission . . ."). A stop becomes unlawful when it is

prolonged "beyond the time reasonable required" to complete the tasks necessary to effectuate the mission of the stop. *Id*. at 1614-15. Thus, an officer's authority to detain an individual ends when those tasks are, or reasonably should be, completed. *Id*. at 1614.

When an officer prolongs a stop to conduct an unrelated inquiry, he may do so only on the basis of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21; see also *Rodriguez*, 135 S.Ct. at 1615 (finding that an officer may not prolong an otherwise lawful traffic stop to conduct unrelated checks "absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). An officer may, however, take "certain negligibly burdensome precautions in order to complete his mission safely," where the officer's safety interest "stems from the mission of the stop itself." *Id.* at 1616.

## ANALYSIS

**1.    The officers' authority to detain Mr. Haskell**

Mr. Haskell was not detained due to a police-observed traffic violation of the type contemplated in *Rodriguez*. Rather, because he was involved in a traffic accident, Mr. Haskell was required to "remain at the scene of the accident until he ha[d] fulfilled the requirements of law." Idaho Code § 49-1301. Nevertheless, the government does not appear to contest that the legal obligation to remain on the scene constitutes a "seizure" under the meaning of the Fourth Amendment.

According to the defense, at the time Officer Hodnett asked to search the vehicle, the only legal obligation requiring Mr. Haskell to remain was for the officers to explain

and provide the citations being issued. *Def.'s Br.* at 10, Dkt 27-1. Thus, Mr. Haskell contends that the officers had legal authority to detain him only for the time reasonably necessary to issue the citations. Relying on *Rodriguez*, Mr. Haskell argues that the four-second period in which Officer Hodnett asked for consent to search the vehicle unlawfully prolonged the seizure beyond the time necessary for the officers to effectuate the accident investigation. *See* 135 S.Ct. at 1616.

While the issuing of a citation generally terminates the authority to detain an individual during a typical traffic stop, the officers here still had at least one additional task remaining when Officer Hodnett requested permission to search the car. Because Mr. Haskell's license had been suspended, he could not legally drive the vehicle away from the scene after receiving his citations. At that time, the vehicle was parked partially in the roadway on an access road. Thus, the vehicle needed, at minimum, to be moved out of the access road and to a safe location. The Court finds that this task was related to the mission of the accident investigation, and that it was lawful to detain Mr. Haskell until this task was completed.

At least one circuit has held that detaining an unlicensed driver until his vehicle can be removed from the roadway does not constitute an unlawful delay of a traffic stop, even where the original mission of the stop – issuing a warning for the traffic violation witnessed – is completed. *See United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017). In *Vargas*, the defendant was the passenger in a vehicle that was stopped when an officer observed the driver commit two traffic violations. *Id.* at 973. Neither the

defendant nor the driver was licensed to operate the vehicle. *Id.* After informing the driver he would only receive a warning, the officer continued to detain both the driver and the passenger for an additional fifteen minutes before asking and obtaining consent to search the vehicle. *Id*. at 974. The Court held that the officer's mission included "get[ting] the vehicle off the side of the interstate," and "enforcement of the law requiring that any person driving a vehicle be licensed to do so." The Court further concluded that because those fifteen minutes were spent attempting to find someone who could legally operate the vehicle and get it off the side of the road, there was no unlawful delay.[2] *Id.*

The reasoning of the 11th Circuit is persuasive. The Court finds that ensuring that a vehicle is safely removed from the roadway is a task that is tied to an officer's mission in investigating and clearing the scene of an accident.[3] Thus, where a driver is unable to lawfully remove his vehicle from the scene, an officer may detain the driver until the vehicle is moved to a safe location. For that reason, the Court finds that the officers' authority to detain Mr. Haskell extended beyond the time reasonably necessary to issue the citations and through the time reasonably necessary to move the vehicle out of the roadway. Thus, the issue before the Court is not whether Officer Hodnett impermissibly

---

[2] In *Vargas* the 11th Circuit held there was no unconstitutional delay because the request for consent occurred while the occupants were lawfully detained. *Id.* at 974. The panel did not address whether the time spent asking for consent to search itself impermissibly prolonged an otherwise lawful stop. Under *Rodriguez*, however, the critical question is not whether the unrelated action occurs before the mission of the stop is complete, but whether it adds time to an otherwise lawful stop. 135 S.Ct. at 1616 ("The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs' – *i.e.*, adds time to 'the stop.'").

[3] For example, Mr. Haskell does not contest that the time spent moving the vehicles from the main road where the accident occurred to the access road, out of traffic, was part of the officers' mission.

delayed in issuing of the citations, but whether he impermissibly detained Mr. Haskell beyond the time necessary to move the vehicle.

**2.     Mission of the stop**

The "tolerable duration of police inquiries . . . is determined by the seizure's mission." *Rodriguez*, 135 S.Ct. at 1614. At issue, therefore, is whether Officer Hodnett was acting to further the mission of the stop when he asked Mr. Haskell whether there was anything in the car that Office Hodnett needed to know about, and whether he could "take a look." *Def.'s Br*. Ex. C at 17:14.

In *Rodriguez*, the Supreme Court identified those "ordinary inquiries" that are "typically" involved in completing a routine traffic stop. *Id*. at 1615. Such inquiries include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Notably, the Court did not list a request for consent to search as one of those ordinary, routine inquiries related to the mission of a traffic stop.

As such, other courts in this Circuit have held that an officer impermissibly prolongs a traffic stop when he asks additional questions that are unrelated to the traffic infraction or the mission of "ensuring that vehicles on the road are operated safely and responsibly." *See, e.g., United States v. Ward*, No. 16-cr-00485-JST, 2017 WL 1549474 at *3 (N.D. Cal. 2017) (citing *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015). And the Court agrees that during a typical stop, a request for consent to search a vehicle is not reasonably related to that mission. *See, e.g.*, *United States v. Cornejo*, 196 F.Supp.

3d 1137, 1152 (E.D. Cal. 2016). Instead, such questions are "aimed at detect[ing] evidence of ordinary criminal wrongdoing," and must be supported by reasonable, articulable suspicion of such wrongdoing. *Ward*, No. 16-cr-00485-JST, 2017 WL 1549474 at *3 (citing *Rodriguez*, 135 S.Ct. at 1615).

But, *Rodriguez* does not preclude an officer from making inquiries other than those listed therein. For example, the *Rodriguez* court held that an officer may investigate ordinary criminal activity without reasonable articulable suspicion, such as by conducting a dog sniff, so long as her investigation does not add time to the stop. *Rodriguez*, 135 S.Ct. at 1615. Further, *Rodriguez* does not preclude extending the length of a stop to make inquiries or take investigative measures beyond those typically associated with a traffic stop, so long as those measures are related to the mission of the particular stop at hand. *Id.* at 1614 (citing *Florida v, Royer*, 460 U.S. 491, 500 (1983) ("[t]he scope of the detention must be carefully tailored to its underlying justification.")); *see also, Vargas*, 848 F.3d at 371 (allowing for extended detention during an atypical traffic stop, where neither driver or passenger was licensed to drive the vehicle away).

Here, the officers were not conducting a typical traffic stop. As discussed above, their mission went beyond simply addressing a traffic violation, and included investigating and clearing the accident scene. At the time Officer Hodnett made the inquiries at issue, the officers' remaining duties included preventing Mr. Haskell from driving away in the vehicle without a valid license, and ensuring that the vehicle was moved out of the roadway.

Officer Hodnett testified that reports of accidents were higher than normal that day, given the snowy conditions, and he felt he needed to return to patrol rather than remain on the scene until a third party arrived to retrieve the vehicle. Officer Hodnett determined that Mr. Haskell could legally move the vehicle off the access road and into the Sage Valley Middle School parking lot because the road and the lot were private property. Thus, Officer Hodnett testified that he intended to allow Mr. Haskell to move the vehicle to the school parking lot, and to leave it there until such time as a third person could come retrieve it. Officer Haskell testified, however, that he had concerns about leaving the vehicle at a school. There is no evidence that there was another easily accessible location where either the officers or Mr. Haskell could safely leave the vehicle.

The Court finds that, under the circumstances, Officer Hodnett's plan was reasonable. Permitting Mr. Haskell to legally move the vehicle to a nearby parking lot (or moving it himself) would accomplish the mission of moving the vehicle out of the roadway, and allow Officer Hodnett to return to patrol rather than wait for a third party or a tow truck. Further, this option likely significantly reduced the time that Mr. Haskell would be detained, as Mr. Haskell would be free to leave once the vehicle was moved.

The Court further finds that it was objectively reasonable to ask Mr. Haskell if there was anything in the car, and for permission to search the vehicle, before leaving it at a school for an indeterminate period of time. Many lawful citizens in Idaho keep guns in their car, but guns are often prohibited on school grounds for safety reasons. Thus, it would be entirely reasonable for an officer to ask a question aimed at determining

whether there was a weapon in the vehicle before allowing it to be parked on school grounds, to avoid a potentially unsafe situation. In this context, it is reasonable to infer that such questions are not directed towards investigating unrelated criminal inquiry, but are instead related to whether the officers could safely and responsibly allow the vehicle to be left on school grounds. *See Rodriguez*, 135 S.Ct. 1616 (finding that a "*de minimis* intrusion" can be outweighed where there is a "legitimate and weighty" interest completing the mission of a seizure safely). Indeed, had Mr. Haskell declined to consent to the search, it would have been reasonable for the officers not to allow him to park the vehicle at the school, but instead to continue to detain him until a third party could be contacted, or a tow truck called.[4] Thus, the Court finds that Officer Hodnett's inquiries were reasonably related to the officers' mission, such that the length of the seizure was tolerable, and the burden on Mr. Haskell was outweighed by the officers' interest in completing the stop safely.

3.   *De minimis* **intrusion**

Under *Rodriguez*, a seizure becomes unlawful when any action unrelated to the underlying justification for the seizure "adds time" to the length of the seizure. 135 S.Ct. at 1616. The extension must be a "measurable" amount of time, which prolongs the seizure beyond the time "reasonably" required to complete the mission. *Id.* at 1614-15.

---

[4] The Court does not suggest that Officer Hodnett had blanket authority to search the vehicle once Mr. Haskell asked to move it to the school parking lot, merely that he had the authority to seek consent to search the vehicle before allowing it to be left on school property.

The *Rodriguez* Court overruled the Eighth Circuit's holding that a delay constituting a mere *de minimis* intrusion on personal liberty was permissible. *Id*. at 1615.

The question of whether there has been any delay, however, rests on the justification for the actions taken during the time period in question. In other words, the *Rodriguez* Court has created a chicken-and-egg scenario. Whether a particular, measurable interval "adds time" to a stop depends on the underlying justification for the actions taken during that time, i.e. whether they are reasonably related to the mission of the stop. But, whether unrelated actions render the seizure unreasonable depends on whether they add time to the stop. Thus, the question of whether a police officer's unrelated actions are unconstitutional ultimately does not depend on whether those actions are justified by reasonable suspicion. Instead, the question depends on arbitrary factors such as how adept the officer is at multi-tasking, whether there is more than one officer on the scene, or how quickly another officer or K9 unit can arrive, which will determine whether an otherwise unjustifiable action can be completed while a person is otherwise lawfully detained.

The Court has found that the four-second interval at issue here did not constitute "delay" because the underlying actions were related to the mission of the stop. Had it found otherwise, however, the Court would be confronted with the question of whether a four-second delay creates so burdensome an intrusion on personal liberty as to be unconstitutional. The Court notes that it has identified no other case holding that a four-second delay caused by an unrelated inquiry, though technically measurable, renders a

seizure unreasonable. In *United States v. Evans*, the Ninth Circuit found that officers unreasonably prolonged a stop when they delayed for eight minutes to obtain an ex-felon check. 786 F.3d 779, 787 (9th Cir. 2015). In *Amanuel v. Soares*, the court found an unreasonable delay where the officers spent ten minutes investigating the driver's prior arrest record. No. 13-cv-05258 NC, 2015 WL 3523173 at *7 (N.D. Cal. June 3, 2015). In *United States v. Cornejo*, the court found that the officers unreasonably prolonged the stop when they took eight minutes to complete a one-page citation, where the delay was caused by asking questions unrelated to the mission of the stop. 196 F.Supp. 3d 1137, 1152 (E.D. Cal. 2016). Finally, in *United States v. Ward*, the court found an unreasonable delay where an officer spent "a few minutes" asking unrelated questions, including whether the driver had anything illegal in his possession, and whether he was on probation or parole. No. 16-cr-00485-JST, 2017 WL 1549474 at *3 (N.D. Cal. May 1, 2017). In each of these cases, the unconstitutional intrusion into personal liberty was due to a delay measured in minutes, not seconds.

With a delay of mere seconds, however, the bright line rule against *de minimis* exceptions in *Rodriguez* is laid bare. It seems unimaginable that adding four seconds *reasonably* renders a constitutional seizure unconstitutional. But, that is what Defendant suggests is the teaching of *Rodriguez*.

Moreover, a finding that a four-second delay renders an otherwise lawful stop unconstitutional would create almost limitless opportunities to challenge the legality of a stop. Under this reading of *Rodriguez*, any pause during a traffic stop interaction, no

matter how brief or innocuous, unconstitutionally extends the stop beyond the time reasonably required to complete its mission. At the same time, a four-second delay is so easily circumvented as to make a rule prohibiting it unnecessary. For example, imagine a scenario where Officer Hodnett had simply extended the citations toward Mr. Haskell, while at the same time asking him if there was anything in the vehicle and for permission to search. In this scenario, because the questions are asked simultaneous with handing over the citations, there is no time added to the stop, and the inquiries are rendered harmless.

Under the expansive reading of *Rodriguez* suggested by Haskell, courts must employ a bright-line "adds time" rule, which imposes limits on police activity that are both arbitrary and essentially insubstantial. Under that view, the issue of whether a particular police action unconstitutionally infringes upon a person's liberty becomes a race against the clock, rather than a substantive consideration of whether, under the totality of the circumstances, the police have unreasonably impaired a defendant's rights in ways our constitutionally-ordered society is unwilling to accept. Fortunately, the Court does not need to resolve whether *Rodriguez* has the almost absurd reach suggested by Haskell.

## CONCLUSION

"There is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Thus, "in justifying the particular intrusion the

police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* The Court submits, therefore, that the proper question here is limited to whether the specific facts of this case justified the particular intrusion by Officer Hodnett. The Court has found that the requisite justification exists, as the relevant inquiries were reasonably related to the mission of moving the vehicle safely out of the roadway, and that such justification outweighs any limited intrusion on Mr. Haskell's rights. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Suppress (Dkt. 27) is **DENIED**.

DATED: April 30, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge